**BEFORE THE**
**UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re: ZILLOW GROUP, INC. SESSION REPLAY SOFTWARE LITIGATION** | **MDL-__** |

**ZILLOW GROUP, INC.'S BRIEF IN SUPPORT OF MOTION TO TRANSFER ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

**BUCHANAN INGERSOLL & ROONEY PC**

By: Samantha L. Southall
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, Pennsylvania 19102
(215) 665-8700
samantha.southall@bipc.com

By:  Christopher J. Dalton
550 Broad Street, Suite 810
Newark, New Jersey 07102-4582
(973) 273-9800
christopher.dalton@bipc.com

By: Jennifer Olmedo-Rodriguez
One Biscayne Tower
2 S. Biscayne Blvd., Suite 1500
Miami, Florida 33131
(305) 347-5900
jennifer.olmedo-rodriguez@bipc.com

*Counsel for Zillow Group, Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND .......................................................................................................... 2

ARGUMENT ............................................................................................................... 6

I.      Transfer is Appropriate Under 28 U.S.C § 1407. ............................................ 6

     A.      The Actions Involve Identical Factual Issues. ........................................ 8

     B.      Transfer Will Serve The Convenience Of The Parties, Witnesses, And Counsel. ......................................................................................... 9

     C.      Transfer Will Promote The Just And Efficient Conduct Of The Actions............ 11

     D.      The Actions Are Sufficiently Numerous And Complex To Warrant Consolidation. ............................................................................... 12

II.      The Western District of Washington Is The Most Appropriate Transferee Forum. .......... 13

CONCLUSION............................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aetna, Inc.*,
609 F. Supp. 2d 1370 (J.P.M.L. 2009)....................................................................13

*In re Air Crash Disaster at Huntington, W. Va. on Nov. 14, 1970*,
342 F. Supp. 1400 (J.P.M.L. 1972)........................................................................9

*In re Air West, Inc. Sec. Litig.*,
384 F. Supp. 609 (J.P.M.L. 1974)..........................................................................8

*In re Allura Fiber Cement Siding Prods. Liab. Litig.*,
366 F. Supp. 3d 1365 (J.P.M.L. 2019)..................................................................12

*In re Azek Bldg. Prods.*,
999 F. Supp. 2d 1366 (J.P.M.L. 2014)..................................................................12

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
148 F. Supp. 3d 1383 (J.P.M.L. 2015)..................................................................14

*In re Bard IVC Filters Prods. Liab. Litig.*,
122 F. Supp. 3d 1375 (J.P.M.L. 2015)..................................................................14

*In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*,
MDL No. 3040, 2022 WL 3134131 (J.P.M.L. Aug. 3, 2022) ...............................12

*In re Clearview AI, Inc. Consumer Privacy Litig.*,
509 F. Supp. 3d 1368 (J.P.M.L. 2020)...............................................................7, 13

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
289 F. Supp. 3d 1322 (J.P.M.L. 2017)..................................................................14

*In re Facebook Internet Tracking Litig.*,
844 F. Supp. 2d 1374 (J.P.M.L. 2012)...................................................................7

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
325 F. Supp. 3d 1362 (J.P.M.L. 2018)...............................................................13, 14

*In re Fed. Election Campaign Act Litig.*,
511 F. Supp. 821 (J.P.M.L. 1979).........................................................................8

*In re FedLoan Student Loan Servicing Litig.*,
340 F. Supp. 3d 1377 (J.P.M.L. 2018)..................................................................14

*In re First Nat'l Bank, Heavener, Okla. (First Mortgage Revenue Bonds) Sec.*
   *Litig.*,
   451 F. Supp. 995 (J.P.M.L. 1978)............................................................................13

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   867 F. Supp. 2d 1356 (J.P.M.L. 2012)......................................................................7

*In re Google Inc. Gmail Litig.*,
   936 F. Supp. 2d 1381 (J.P.M.L. 2013)..............................................................9, 13

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Prod.*
   *Liab. Litig.*,
   220 F. Supp. 3d 1356 (J.P.M.L. 2016)....................................................................11

*In re Lehman Bros. Hldg., Inc.*,
   598 F. Supp. 2d 1362 (J.P.M.L. 2009)....................................................................10

*In re Lenovo Adware Litig.*,
   109 F. Supp. 3d 1366 (J.P.M.L. 2015)....................................................................14

*In re Neo Wireless, LLC, Pat. Litig.*,
   MDL No. 3034, 2129058 (J.P.M.L. June 14, 2022)...............................................12

*In re Nickelodeon Consumer Privacy Litig.*,
   949 F. Supp. 2d 1377 (J.P.M.L. 2013)...............................................................7, 12

*In Re Nifedipine*,
   266 F. Supp. 2d 1382 (J.P.M.L. 2003)......................................................................6

*In re Okun*,
   609 F. Supp. 2d 1380 (J.P.M.L. 2009)....................................................................13

*In re Packaged Seafood Prods. Antitrust Litig.*,
   148 F. Supp. 3d 1375 (J.P.M.L. 2015)....................................................................14

*In re Payless ShoeSource, Inc.*,
   609 F. Supp. 2d 1372 (J.P.M.L. 2009)....................................................................13

*In re Phenylpropanolamine Prod. Liab. Litig.*,
   460 F.3d 1217 (9th Cir. 2006)..................................................................................7

*In re Samsung Top-Load Washing Machine Mktg., Sales Practices and Prods.*
   *Liab. Litig.*,
   278 F. Supp. 3d 1376 (J.P.M.L. 2017)......................................................................9

*In re Smitty's/Cam2 303 Tractor Hydraulic Fluid Mktg., Sales Practices & Prods.*
   *Liab. Litig.*,
   466 F. Supp. 3d 1380 (J.P.M.L. 2020)....................................................................12

*In re Sony Corp. SXRD Rear Projection TV Mktg. Sales Practices & Prods. Liab. Litig.*,
    655 F. Supp. 2d 1367 (J.P.M.L. 2009)....................................................................10

*In re TikTok, Inc., Consumer Privacy Litig.*,
    481 F. Supp. 3d 1331 (J.P.M.L. 2020)....................................................................7

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices, & Prod. Liab. Litig.*,
    732 F. Supp. 2d 1375 (J.P.M.L. 2010)..................................................................14

*In re Transocean Ltd. Sec. Litig. (No. II)*,
    753 F. Supp. 2d 1373 (J.P.M.L. 2010)..................................................................12

*In re Travel Agent Comm'n Antitrust Litig.*,
    290 F. Supp. 2d 1381 (J.P.M.L. 2003)....................................................................8

*In re Vizio, Inc., Consumer Privacy Litig.*,
    176 F. Supp. 3d 1374 (J.P.M.L 2016)...............................................................7, 10

**Statutes**

28 U.S.C. § 1407................................................................................................ *passim*

**Rules**

Multidistrict Litigation Rule of Procedure 6.2..............................................................1

Defendant Zillow Group, Inc. ("Zillow"), by and through undersigned counsel, respectfully submits this brief in support of its motion pursuant to 28 U.S.C. § 1407 and the United States Judicial Panel on Multidistrict Litigation Rule of Procedure 6.2 for the transfer of certain actions to the United States District Court for the Western District of Washington for coordinated or consolidated pretrial proceedings.

## INTRODUCTION

Plaintiffs in five different states have filed eight putative class actions in six separate federal district courts across the country, each alleging that Zillow violated various states' wiretapping statutes and committed common law privacy torts through the alleged use of technology purportedly embedded on its desktop and mobile websites (collectively, the "Actions").  This panel should transfer and assign the pending Actions listed in the Schedule of Actions to the United States District Court for the Western District of Washington – as well as any subsequently filed similar actions – because each action arises from the same substantive factual allegations and asserts nearly identical legal theories of recovery.  In addition, each action is in a nascent stage: Zillow has not yet responded to any of the eight complaints, nor has discovery commenced.

More specifically, each Action arises from Plaintiffs' alleged interaction with snippets of JavaScript computer code ("Session Replay Code") purportedly embedded on Zillow's desktop and mobile websites which, Plaintiffs contend, "deploys on each website visitor's internet browser for the purpose of intercepting and recording the website visitor's electronic communications with the Zillow website, including their [sic] mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic

communications in real-time ('Website Communications')."[1]   The Actions all seek similar relief on behalf of Zillow desktop and mobile website visitors whose website communications were allegedly "captured" or "intercepted" through the use of Session Replay Code.

The Western District of Washington is the most appropriate district within which to consolidate these substantively identical Actions because it is where Zillow is headquartered, where many witnesses are likely to be located, and where, as one complaint alleges, "a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred."  *See Perkins* Compl. at ¶ 10.  Moreover, Zillow's Terms of Use, which are disclosed to the public, identify the state and federal courts in King County, Washington as the exclusive venue for all disputes arising from Plaintiffs' use of the websites.  *Id.* at ¶ 80.  Because of the nature of Zillow's business, including its nationwide virtual footprint and its usage by individuals in multiple (and, perhaps, all) states, additional cases filed in the future should also be consolidated in the Western District of Washington.

## BACKGROUND

Zillow was founded and is headquartered in Seattle, Washington, first launching its website in 2006.  As the most-visited real estate website in the United States, Zillow's companies offer users an on-demand experience for selling, buying, renting, and financing properties with

---

[1]      This exact language appears in six of the eight complaints. *See Margulis v. Zillow Group, Inc.,* No. 1:22-cv-04847 (Sep. 8, 2022) (N.D. Ill.); *Popa v. Zillow Group, Inc.,* No. 2:22-cv-01287 (Sep. 8, 2022) (W.D. Pa.); *Perkins v. Zillow Group, Inc.,* No. 2:22-cv-01282 (Sep. 12, 2022) (W.D. Wash.); *Strelzin v. Zillow Group, Inc.,* No. 1:22-cv-05644 (Sep. 15, 2022) (N.D. Ill.); *Conlisk v. Zillow Group, Inc.,* No. 1:22-cv-05082 (Sep. 19, 2022) (N.D. Ill.); *Adams v. Zillow Group, Inc.,* No. 4:22-cv-01023 (Sep. 27, 2022) (E.D. Mo.).  The other two complaints contain identical contentions that Zillow uses "'session replay' spyware to intercept Plaintiff's and the Class members' electronic computer-to-computer data communications with Defendant's website, including how they interacted with the website, their mouse movements and clicks, keystrokes, search terms, information inputted into the website, and pages and content viewed while visiting the website." *See Huber v. Zillow Group, Inc.,* No. 2:22-cv-03572 (Sep. 7, 2022) (E.D. Pa.); *Kauffman v. Zillow Group, Inc.,* No. 3:22-cv-01398 (Sep. 15, 2022) (S.D. Cal.).

transparency and nearly seamless end-to-end service.

On September 7, 2022, Plaintiff Jamie Huber filed a putative class action in the United States District Court for the Eastern District of Pennsylvania alleging that Zillow improperly utilized Session Replay Code to "intercept . . . electronic computer-to-computer data communications," and in doing so, purportedly storing and recording website visitors' information without the visitors' knowledge or prior consent. *Huber* Compl. at ¶ 3. Huber claims that Zillow's alleged interception and capture of her interactions with the Zillow website "through her computer and/or mobile device" by the Session Replay Code violate the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701 *et seq.* ("WESCA"). *Id.* at ¶¶ 26, 37, 75-87.

Between September 7 and September 27, 2022 – a mere twenty days –seven more nearly identical putative class action complaints were filed in six additional courts, sometimes by some of the same lawyers. Those actions are:

| CASE NAME | JURISDICTION | DATE FILED |
|---|---|---|
| *Popa v. Zillow Group, Inc.* Case No. 2:22-cv-01287 | W.D. Pennsylvania | 9/8/2022 |
| *Margulis v. Zillow Group, Inc.* Case No. 1:22-cv-04847 | N.D. Illinois | 9/8/2022 |
| *Perkins v. Zillow Group, Inc. and Microsoft Corp.* Case No. 2:22-cv-01282 | W.D. Washington | 9/12/2022 |
| *Kauffman v. Zillow Group, Inc.* Case No. 3:22-cv-01398 | S.D. California | 9/15/2022 |
| *Strelzin v. Zillow Group, Inc.* Case No. 1:22-cv-05644 | Cook County Circuit Court (filed) N.D. Illinois (removed) | 9/15/2022 (filed) 10/14/2022 (removed) |
| *Conlisk v. Zillow Group, Inc.* Case No. 1:22-cv-05082 | N.D. Illinois | 9/19/2022 |
| *Adams v. Zillow Group, Inc.* Case No. 4:22-cv-1023 | E.D. Missouri | 9/27/2022 |

In each of the complaints, the common factual allegations regarding Zillow's use of Session Replay Code are largely indistinguishable and, in some instances, identical. The sameness

of these Actions is perhaps best demonstrated by the fact that six of the eight Actions use *identical* screenshots and descriptions that depict "information sent to one of the Service Replay Providers— Microsoft – through a Session Replay Code – Clarity – after viewing a Studio apartment priced at $1,488 while visiting www.zillow.com" and "after entering a name (purple text) to a text box to schedule a tour of a property":



*Depicting information sent to one of the Service Replay Providers—Microsoft—through a Service Replay Code—Clarity—after viewing a Studio apartment priced at $1,488 while visiting www.zillow.com.*



*Depicting information sent to one of the Service Replay Providers—Microsoft—through a Service Replay Code—Clarity—after entering a name (purple text) to a text box to schedule a tour of a property.*

Not only are these screenshots and descriptions identical – they are found at the exact same location within the six complaints that utilize them. *See Margulis* Compl. at ¶¶ 49-50; *Conlisk* Compl. at ¶¶ 51-52; *Perkins* Compl. at ¶¶ 61-62; *Popa* Compl. at ¶¶ 48-49; *Strelzin* Compl. at ¶¶ 49-50; and

*Adams* Compl. at ¶¶ 51-52.[2]

Plaintiffs' theories of recovery are also nearly identical.  Each action asserts a civil claim for violation of a state wiretapping law. *See Huber* Compl. at ¶ 2 and *Popa* Compl. at ¶ 3 (WESCA); *Margulis* Compl. at ¶ 3, *Conlisk* Compl. at ¶ 4, and *Strelzin* Compl. at ¶ 3 (Illinois Eavesdropping Act, 720 ILCS 5/14-1, *et seq.*); *Kauffman* Compl. at ¶ 1 (California Penal Code § 631, ("CIPA"); *Adams* Compl. at ¶ 3 (Missouri Wiretap Act, Mo. Ann. Stat. §§ 542.400 *et seq.*); *Perkins* Compl. at ¶ 3 (Washington Wiretapping Statute, Wash. Rev. Code § 9.73.030 *et seq.*). Seven of the Actions also assert a tort claim for invasion of privacy, and four Actions assert claims for violation of consumer protection laws. *Margulis* Compl. at ¶ 3, *Conlisk* Compl. at ¶4, and *Strelzin* Compl. at ¶ 3 (Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*); *Adams* Compl. at ¶ 3 (Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*).

Moreover, each Plaintiff seeks to represent a putative class of persons whose communications were "intercepted" or "captured through the use of Session Replay Code embedded in www.zillow.com." *See Huber* Compl. at ¶ 64; *Popa* Compl. at ¶ 56; *Margulis* Compl. at ¶ 57; *Conlisk* Compl. at ¶ 59; *Strelzin* Compl. at ¶ 57; *Kauffman* Compl. at ¶ 57; *Adams* Compl. at ¶¶ 59-60; *Perkins* Compl. at ¶ 69.

While seven of the eight complaints seek to certify classes of state residents, the *Perkins* action pending in the Western District of Washington asserts claims on behalf of a putative nationwide class.[3]  In seven of the eight Actions, Zillow is the sole defendant, and Microsoft, Inc.

---

[2]    Interestingly, these identical screenshots are used despite the fact that four different sets of lawyers represent these Plaintiffs.

[3]    The Missouri Action also alleges a putative subclass of "minors" who allegedly visited Zillow's website. *Adams* Compl. at ¶ 60.

(also located in Washington) is a co-defendant with Zillow in the *Perkins* Action.   In the eighth Action (*Perkins*), the only other defendant is Microsoft, Inc., which is also located in Washington. Thus, while the residency of the Plaintiffs vary, the Action with the largest putative class is pending in Washington, and all of the Defendants in all eight Actions are located in Washington.

Critically, all eight Actions are in their infancy.  Zillow has not yet responded to any of the complaints; no court has scheduled or conducted an initial pretrial conference pursuant to Fed. R. Civ. P. 16(b); and no discovery has yet commenced.

## ARGUMENT

Pursuant to 28 U.S.C. §1407(a), transfer is appropriate where, as here: (1) the cases "involv[e] one or more common questions of fact;" (2) transfer and consolidated or coordinated proceedings will further "the convenience of parties and witnesses;" and (3) transfer and consolidated or coordinated proceedings "will promote the just and efficient conduct of [the] actions."  *See In Re Nifedipine*, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003).

The Actions involve effectively identical factual allegations and legal issues.  Transfer will benefit the parties, the witnesses, and the courts.  The Actions involve the same desktop and mobile websites, the same allegations about Zillow's use of Session Replay Code, and virtually identical proposed classes.  Further, because Zillow is located in the Western District of Washington and many witnesses are likely to be located in that jurisdiction, transfer to that District is most appropriate.  Absent transfer for pretrial proceedings, the parties will incur excessive costs due to duplicative discovery in California, Illinois, Missouri, Pennsylvania, and Washington (at a minimum).  They also will face the substantial risk of inconsistent rulings.

## I.   Transfer is Appropriate Under 28 U.S.C § 1407.

Transfer of the Actions is appropriate and will further the goals of the statute to promote efficiency and consistency.  The statute "was meant to assure uniform and expeditious treatment

in the pretrial procedures in multidistrict litigation" and to avoid inconsistent pretrial demands that might "disrupt the functions of the Federal courts." *In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006) (quotation omitted). Because centralization of the Actions will "eliminate duplicative discovery and the possibility of inconsistent rulings on class certification and other pretrial matters, as well as conserve judicial and party resources," this Panel should transfer the Actions to the Western District of Washington. *In re TikTok, Inc., Consumer Privacy Litig.*, 481 F. Supp. 3d 1331 (J.P.M.L. 2020).

Centralization of these Actions accords with the Panel's previous decisions "involving the allegedly unlawful tracking of individuals' internet activity." *In re Nickelodeon Consumer Privacy Litig.*, 949 F. Supp. 2d 1377 (J.P.M.L. 2013). Indeed, the Panel has consistently transferred consumer privacy actions similar to this one for coordination. *See, e.g.*, *In re Clearview AI, Inc. Consumer Privacy Litig.*, 509 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020) (claims based on alleged improper collection and distribution or sale of citizens' biometric data); *In re TikTok, Inc., Consumer Privacy Litig.*, 481 F. Supp. 3d 1331 (J.P.M.L. 2020) (claims based on allegedly improper scanning, capture, retention, and dissemination of facial geometry and other biometric information of app's users); *In re Vizio, Inc., Consumer Privacy Litig.*, 176 F. Supp. 3d 1374, 1375–76 (J.P.M.L 2016) (claims based alleged violations of customers' privacy rights through collection and sharing of Smart TV viewing data); *In re Nickelodeon Consumer Privacy Litig.*, 949 F. Supp. 2d 1377, 1378 (J.P.M.L. 2013) (claims based alleged violations of privacy rights of minor children); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 867 F. Supp. 2d 1356, 1357 (J.P.M.L. 2012); *In re Facebook Internet Tracking Litig.*, 844 F. Supp. 2d 1374, 1375 (J.P.M.L. 2012) (claims based alleged violations of wiretap laws, Stored Electronic Communications Act, 18 U.S.C. § 2701, CAFA, and common law claims for invasion of privacy,

unjust enrichment, and trespass to chattels).

**A.      The Actions Involve Identical Factual Issues.**

The initial test for transfer and coordination under Section 1407 is the presence of similar

questions of fact.  *In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979).

This threshold requirement is satisfied where, as here, "two or more complaints assert comparable

allegations against identical defendants based upon similar transactions and events…." *In re Air

West, Inc. Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1974).

The alleged conduct underlying the Actions consists of nearly identical factual assertions

arising from nearly identical events: that Zillow allegedly deploys snippets of JavaScript computer

code referred to as "Session Replay Code" from its desktop and mobile websites onto each website

visitor's internet browser; that it purportedly does so  for the purpose of intercepting and recording

each website visitor's private electronic communications without their consent; and that each

Plaintiff was allegedly harmed by visiting Zillow's website.   The factual questions to be

adjudicated will include, but are not limited to, whether: (1) Zillow's Session Replay Code

"intercepts" website interactions; (2) Zillow used "Session Replay Providers" (such as Microsoft)

to intercept and record website interactions; (3) Zillow intentionally disclosed website interactions

of its website users to third parties; (4) Zillow disclosed to its users that it was purportedly

capturing their website interactions; (5) Plaintiffs consented to the use of Session Replay Code;

(6) Plaintiffs had a reasonable expectation of privacy in their activities on the Zillow.com website;

(7) users' website interactions constitute "communications"; and (8) Session Replay Code is an

"eavesdropping device".

Any differences in the factual allegations of each case are minimal at best and do not negate

that transfer is proper pursuant to Section 1407.  *See In re Travel Agent Comm'n Antitrust Litig.*,

290 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003) ("Section 1407 does not require a complete identity

or even [a] majority of common factual and legal issues as a prerequisite to centralization."); *cf. In re Samsung Top-Load Washing Machine Mktg., Sales Practices and Prods. Liab. Litig.*, 278 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017) (granting motion as to an action that focused on one component of the product in question where the other MDL actions focused on various components of the product).  As discussed above, but for minor variations specific to the individual Plaintiffs, the complaints in the Actions are all but identical.

The Actions likewise involve similar legal theories.  These will require adjudication of whether Zillow engaged in, among other things, invasion of consumers' common law privacy rights, violations of various states wiretapping laws, and violations of state consumer-protection laws in its alleged use of Session Replay Code on its desktop and mobile websites.  Although the legal claims differ slightly in each case due to the differing state wiretapping and consumer protection laws invoked, *all* Plaintiffs seek damages and injunctive relief from Zillow for the *same* alleged conduct and the *same* alleged injury.  While the Panel has held that "Section 1407 requires the existence of common questions of fact, not common questions of law," *In re Air Crash Disaster at Huntington, W. Va. on Nov. 14, 1970*, 342 F. Supp. 1400, 1402 (J.P.M.L. 1972), here, the questions of law are quite common as well.  Moreover, this Panel has previously held that potential differences between state wiretapping and eavesdropping laws do not preclude consolidation.  *See In re Google Inc. Gmail Litig.*, 936 F. Supp. 2d 1381, 1382 (J.P.M.L. 2013) (consolidating class actions against Google where, as here, plaintiffs from various states alleged that defendant's conduct "amount[ed] to an illegal 'interception' or 'eavesdropping' under various federal and/or state wiretapping statutes.")

### B.     Transfer Will Serve The Convenience Of The Parties, Witnesses, And Counsel.

Centralization under Section 1407 also will "ensure[] that pretrial proceedings will be

conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Lehman Bros. Hldg., Inc*., 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009).  Transfer of multiple actions to a single forum prevents duplication of efforts and eliminates the possibility of overlapping or inconsistent determinations by courts of coordinate jurisdiction.  *See In re Vizio, Inc., Consumer Privacy Litig.*, 176 F. Supp. 3d 1374, 1375–76 (J.P.M.L 2016)*; In re Sony Corp. SXRD Rear Projection TV Mktg. Sales Practices & Prods. Liab. Litig*., 655 F. Supp. 2d 1367 (J.P.M.L. 2009).  Consolidating the Actions into a single centralized and coordinated pretrial program will further the statute's goals of fairness and efficiency.

Consolidation will also serve to minimize the inconvenience, inefficiencies, and expense of redundant and duplicative discovery – precisely the purpose of transfer and coordination under Section 1407.  Written discovery and witnesses to be deposed will undoubtedly be largely identical in each of the eight Actions.  Transfer to Western District of Washington – where the *Perkins* matter is already pending and where Zillow (and Microsoft) are headquartered – will be more convenient for the parties, witnesses, and counsel.  To the extent that non-parties are also witnesses or possess potentially responsive evidence, coordination and consolidation benefits them, too. Indeed, without transfer, Zillow will be forced to defend itself in at least six different federal courts for the same legal claims arising from the same factual allegations.

Moreover, each of the Actions – filed in California, Illinois, Missouri, Pennsylvania, and Washington – should have been filed in the United States District Court for the Western District of Washington in the first place, as the Zillow website Terms of Use – which are disclosed to the public, and to which the website's users are subject – are governed by the laws of the State of Washington:

> Choice of Law; Disputes. These Terms of Use are governed by the laws of the State of Washington, without giving effect to its conflict

of laws provisions. You agree to submit to the personal and exclusive jurisdiction and venue in the state and federal courts sitting in King County, Washington for all disputes, claims, and actions arising from or in connection with the Services or otherwise under these Terms of Use. The Zillow Companies operate the Services from our offices in Washington, and we make no representation that the Services are appropriate or available for use in other locations.[4]

Thus, the Western District of Washington is not only the most convenient forum, it is the only appropriate one.[5]

### C.    Transfer Will Promote The Just And Efficient Conduct Of The Actions.

In addition, transfer of the Actions for coordinated pretrial proceedings will "promote the just and efficient conduct of [the] actions" in accordance with the third requirement of Section 1407(a).  Because the Actions were only commenced last month, consolidation will maximize efficiencies and expedite the resolution of the issues in each case.  *See In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Prod. Liab. Litig*., 220 F. Supp. 3d 1356, 1358 (J.P.M.L. 2016) (granting consolidation where nearly all the actions were filed within a six-month period).  Indeed, the Actions will involve many of the same pretrial issues, such as those concerning the nature and scope of fact discovery, resolution of expert discovery issues and *Daubert* motions, and resolution of legal issues and affirmative defenses at summary judgment. For example, if the Southern District of California, the Northern District of Illinois, the Eastern District of Missouri, the Eastern and Western Districts of Pennsylvania, and the Western District

---

[4]        https://www.zillowgroup.com/terms-of-use/ (last visited 10/19/2022).

[5]        The *Perkins* action plaintiffs further allege that "Washington, which seeks to protect the rights and interests of Washington and other U.S. consumers against a company doing business in Washington, has a greater interest in the claims of Plaintiffs and the Class than any other state and is most intimately concerned with the outcome of this litigation." *Perkins* Compl. at ¶ 81.  Given that the *Perkins* plaintiffs seek a nationwide class, this statement is clearly intended to influence a choice-of-law analysis applying Washington law nationwide – with which Zillow disagrees – but nevertheless shows that Washington is the center of gravity here.

of Washington were independently required to each resolve pre-trial issues relating to the overlapping factual record, valuable judicial resources would be wasted and there would be an exceptionally high risk of inconsistent discovery, summary judgment, class allegation, and certification rulings.  *See In re Clearview AI, Inc., Consumer Privacy Litig.*, 509 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020); *In re Allura Fiber Cement Siding Prods. Liab. Litig.*, 366 F. Supp. 3d 1365 (J.P.M.L. 2019); *In re Nickelodeon Consumer Privacy Litig.*, 949 F. Supp. 2d 1377, 1378 (J.P.M.L. 2013).   This outcome would be unfair to both Plaintiffs and Zillow alike and would burden the court system by creating inefficient procedure and potentially conflicting precedent.

      **D.**     **The Actions Are Sufficiently Numerous And Complex To Warrant Consolidation.**

There are currently eight cases pending in six separate courts in five different states filed within twenty days of each other.  There remains the distinct possibility that others will be filed. While there is no "magic number" of pending cases required to grant consolidation under Section 1407, the eight Actions here involve sufficient number of mutual issues and complexities to warrant consolidation.

As a starting point, the Panel regularly centralizes actions where six or more early-stage actions are pending across multiple jurisdictions.[6]  *See, e.g.*, *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, MDL No. 3040, 2022 WL 3134131 (J.P.M.L. Aug. 3, 2022) (seven actions in four districts); *In re Neo Wireless, LLC, Pat. Litig.*, MDL No. 3034, 2129058 (J.P.M.L. June 14, 2022) (seven actions in five districts); *In re Smitty's/Cam2 303 Tractor Hydraulic Fluid Mktg.,*

---

[6] "[W]here only a minimal number of actions are involved," a party requesting centralization may bear a heavier burden to demonstrate that it is appropriate.  However, that heavier burden – utilized in limited circumstances with far fewer actions at issue – does not apply here.  *See In re Transocean Ltd. Sec. Litig. (No. II)*, 753 F.Supp.2d 1373, 1374 (J.P.M.L. 2010) (applying heavier burden where there were only two actions); *cf. In re Azek Bldg. Prods.*, 999 F.Supp.2d 1366 (J.P.M.L. 2014) (transferring one case into the District of New Jersey for consolidation).

*Sales Practices & Prods. Liab. Litig.*, 466 F. Supp. 3d 1380 (J.P.M.L. 2020) (eight actions in eight districts); *In re Clearview AI, Inc. Consumer Privacy Litig.*, 509 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020) (nine actions in two districts); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 325 F. Supp. 3d 1362, 1363 (J.P.M.L. 2018) (eight actions in four districts); *In re Google Inc. Gmail Litig.*, 936 F. Supp. 2d 1381, 1382 (J.P.M.L. 2013) (six actions in five districts).

Additionally, where, as here, the issues involved are sufficiently complex and centralization would prevent duplicative pretrial proceedings and rulings, the Panel has ordered transfer even when as few as two cases were pending.  *See, e.g.*, *In re First Nat'l Bank, Heavener, Okla. (First Mortgage Revenue Bonds) Sec. Litig.*, 451 F. Supp. 995, 997 (J.P.M.L. 1978) (centralization was "necessary, even though only two actions are involved, in order to prevent duplicative pretrial proceedings and eliminate the possibility of inconsistent pretrial rulings"); *see also In re Okun*, 609 F. Supp. 2d 1380, 1382 (J.P.M.L. 2009) (centralizing two actions); *In re Payless ShoeSource, Inc.*, 609 F. Supp. 2d 1372 (J.P.M.L. 2009) (same); *In re Aetna, Inc.*, 609 F. Supp. 2d 1370 (J.P.M.L. 2009) (same).

The eight Actions involve related factual issues regarding the same complex technology; each action involves a different set of Plaintiffs asserting effectively identical theories against the same defendants regarding the same Replay Session Code; the allegations present unique expert discovery issues; and there is a risk of inconsistent rulings.  The Actions are sufficiently numerous and complex to warrant consolidation.

## II.    The Western District of Washington Is The Most Appropriate Transferee Forum.

There is a significant nexus to the Western District of Washington and the Panel should transfer the Actions there.  A significant "nexus" exists when a party which is common to all actions (*e.g.*, the defendant) is headquartered or has facilities that are located within the transferee court's jurisdiction, such that relevant witnesses and documentary evidence common to all the

actions are likely to be found there. *In re FedLoan Student Loan Servicing Litig.*, 340 F. Supp. 3d 1377, 1378 (J.P.M.L. 2018) (transferring cases to a district "near defendant's headquarters . . . where witnesses and documents [were] likely to be located"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 325 F. Supp. 3d 1362, 1364 (J.P.M.L. 2018) (transferring cases to the Northern District of California because it is "where Facebook is headquartered and relevant evidence and witnesses are likely to be located"); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1326 (J.P.M.L. 2017) (transferring 97 cases to the Northern District of Georgia because "Equifax is headquartered in that district, and relevant documents and witnesses thus likely will be found there"); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 148 F. Supp. 3d 1383, 1386 (J.P.M.L. 2015) (transferring cases to the District of Minnesota because "defendants are headquartered in Minnesota, and many witnesses and relevant documents are likely to be found there."); *In re Packaged Seafood Prods. Antitrust Litig.*, 148 F. Supp. 3d 1375, 1377 (J.P.M.L. 2015) (transferring cases to defendant's home district because "relevant documents and witnesses are likely to be found there"); *In re Bard IVC Filters Prods. Liab. Litig.*, 122 F. Supp. 3d 1375, 1376-77 (J.P.M.L. 2015) (transferring to District of Arizona, where defendant was headquartered and documents and witnesses were there); *In re Lenovo Adware Litig.*, 109 F. Supp. 3d 1366, 1367 (J.P.M.L. 2015) (same); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices, & Prod. Liab. Litig.*, 732 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) ("We are persuaded that the Central District of California is an appropriate transferee forum for this litigation. Defendants maintain their United States corporate headquarters within this district, and relevant documents and witnesses are likely located there.").

The Western District of Washington is the center of gravity for the Actions: it is where Zillow (and Microsoft) are headquartered; where many of the witnesses are likely located; where

substantial acts regarding the alleged conduct occurred; and it is the venue agreed to by all users when they visit the website. *See* https://www.zillowgroup.com/terms-of-use. The Western District of Washington will serve the convenience of the parties and witnesses, and it will promote the just and efficient management of this litigation. It is the most appropriate transferee court.

## **CONCLUSION**

For all the foregoing reasons, Zillow respectfully requests that the Panel enter an order consolidating for pretrial proceedings the putative class Actions already filed, as well as any other related actions that are subsequently filed, to the United States District Court for the Western District of Washington.

Dated: October 19, 2022

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

By: */s/ Samantha L. Southall*
Samantha L. Southall
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, Pennsylvania 19102
(215) 665-8700
samantha.southall@bipc.com

Christopher J. Dalton
550 Broad Street, Suite 810
Newark, New Jersey 07102-4582
(973) 273-9800
christopher.dalton@bipc.com

Jennifer Olmedo-Rodriguez
One Biscayne Tower
2 S. Biscayne Blvd., Suite 1500
Miami, Florida 33131
(305) 347-5900
jennifer.olmedo-rodriguez@bipc.com

*Counsel for Zillow Group, Inc.*